# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-993V**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

|  |  |
|---|---|
| WOLFGANG R. MOENIG *and* MARTINA MOENIG, *as next friend of M.M., a minor*, <br><br> Petitioners, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Special Master Jennifer A. Shah <br><br> Filed: March 23, 2026 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

*Scott W. Rooney*, Nemes Rooney, P.C., Farmington Hills, MI, for Petitioners.
*Jeremy Mauritzen*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On February 26, 2021, Wolfgang and Martina Moenig, as next friend of minor M.M. ("Petitioners"), filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"), alleging that M.M. developed chronic inflammatory demyelinating polyneuropathy ("CDIP") as a result of an influenza ("flu") vaccination he received on January 17, 2018.  ECF No. 1 ("Pet.") at 2-4.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

After filing the petition, Petitioners filed an affidavit and several medical records. Exs. 1-15. On August 15, 2022, Respondent filed a Rule 4(c) Report, contending that entitlement to compensation should be denied. ECF No. 37. Thereafter, the parties filed several rounds of expert reports and medical literature, and Petitioners filed additional medical records. *See* Exs. 16-25; Exs. A-F. This case was reassigned to me on August 14, 2024. ECF No. 67. An entitlement hearing is scheduled for December 8-10, 2026. *See* Non-PDF Scheduling Order dated 6/30/2025.

On September 16, 2025, Petitioners filed an application for interim attorneys' fees and costs, requesting a total of $87,181.73, comprised of $46,048.50 for attorneys' fees and $41,133.23 for attorneys' costs. ECF No. 82 ("Fees App."), Ex. 1 at 15. This is Petitioners' first motion for interim fees and costs. Petitioners do not appear to have incurred any personal costs. *See* Fees App., Ex. 1 at 15.

Respondent filed a response to the fee application on September 29, 2025, deferring to me as to whether Petitioners have met the legal standard for an award of interim attorneys' fees and costs. ECF No. 83 ("Fees Resp.") at 2. Petitioners filed a reply on October 13, 2025, arguing in support of the hourly rates requested for their counsel and experts and maintaining their request for fees and costs. ECF No. 86 ("Fees Reply").

I hereby **GRANT IN PART** Petitioners' application and award a total of **$76,216.73** in interim attorneys' fees and costs.

## I.    Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *1-2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sep. 30, 2015).

2

The undue hardship inquiry looks at more than just the financial involvement of a petitioner; it also considers the expenditures of counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

## B. Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 665 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *2 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioners had an honest belief that their claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

## C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just Petitioners' belief in their claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Rountree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283-87 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis . . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof

3

could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider myriad factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.  Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Petitioners' counsel has worked on this case since 2020 and has not yet been awarded interim fees and costs. Counsel filed an affidavit, medical records, expert reports, and medical literature. I find that Petitioners would suffer undue hardship without an award of interim fees and costs.

### B.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 2. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. Based on the materials

filed by Petitioners thus far as described above, I find that they have maintained a reasonable basis for their claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award interim fees and costs as described below.

## C. Attorneys' Fees

Petitioners request a total of $46,048.50 in attorneys' fees for Mr. Scott W. Rooney of Nemes Rooney, P.C. ("Nemes Rooney"). Fees App. at 2; Fees App., Ex. 1 at 15. Petitioners bear the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sep. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

There appears to be some inconsistency in Mr. Rooney's requested hourly rates. In most years in which work was performed on this case, the rate requested in the fee application is not the same as the rate that was actually billed to Petitioners. Sometimes the rate billed was higher than the rate requested in the fee application; other times the rate billed was lower. For example, the invoice in Exhibit 1 indicates that Mr. Rooney charged $350.00 for an hour of work performed in 2020, more the fee application's requested rate of $300.00 per hour for work performed in 2020. *Compare* Fees App., Ex. 1 at 4 *with* Fees App. at 2. On the other hand, Mr. Rooney billed $350.00 for an hour of work performed in 2022 but requested in the fee application $400.00 per hour for that same work. *Compare* Fees App., Ex. 1 at 6 *with* Fees App. at 2. This issue has been raised with Mr. Rooney before, and I again remind him to submit accurate motions and billing sheets that reflect the actual rate he is billing for his work in the Vaccine Program. *See Jinkerson v Sec'y of Health & Hum. Servs.*, No. 18-1355V, 2024 WL 3760329, at *3-4 (Fed. Cl. Spec. Mstr. July 11, 2024) (addressing similar discrepancies between the hourly rates Mr. Rooney requested and billed); *Thomas v. Sec'y of Health & Hum. Servs.*, No. 14-966V, 2018 WL 5725184, at *2 (Fed. Cl. Spec. Mstr. Oct. 5, 2018) (same).

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015-2026 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

I reviewed Mr. Rooney's invoice to discern the rates at which he actually billed. He billed his clients $300.00 per hour for work performed in 2018; $350.00 per hour for work performed from 2019-2022; $480.00 per hour for work performed in 2023; and $500.00 per hour for work performed from 2024-2025. Fees App., Ex. 1. Though these rates are inconsistent with the requested rates, they correspond to the total fees actually charged, and I will therefore use these rates to award compensation for Mr. Rooney's work.[4] *See* Fees App., Ex. 1 at 15. I also note that these rates are generally in line with rates Mr. Rooney has been previously awarded (though there have been significant discrepancies from case to case). *See Kiekintveld v. Health & Hum. Servs.,* No. 23-67V, 2025 WL 1891728, at *1 (Fed. Cl. Spec. Mstr. June 5, 2025) (awarding $500.00 per hour for work billed from 2024-2025); *Heath v Sec'y of Health & Hum. Servs.,* No. 19-1438V, 2025 WL 545046, at *2 (Fed. Cl. Spec. Mstr. Jan. 21, 2025) (awarding $300.00 per hour for work billed from 2018-2019, $350.00 per hour for work billed in 2020, $400.00 per hour for work billed from 2021-2022, and $500.00 for work billed from 2023-2024); *Jaye v. Sec'y of Health & Hum. Servs.,* No. 20-672V, 2024 WL 5118499, at *3 (Fed. Cl. Spec. Mstr. Nov. 15, 2024) (awarding $350.00 per hour for work billed in 2018, $375.00 per hour for work billed from 2019-2020, $400.00 per hour for work billed in 2021, $470.00 per hour for work billed in 2022, and $480.00 per hour for work billed from 2023-2024); *Schweder v. Sec'y of Health & Hum. Servs.,* No. 20-1077V, 2022 WL 4078659, at *2 (Fed. Cl. Spec. Mstr. Aug. 4, 2022) (awarding $375.00 per hour for 2019-2020, $400.00 per hour for 2021, and $470.00 for 2022); *Heil v. Sec'y of Health & Hum. Servs.,* No. 19-0109V, 2022 WL 3639431, at *2 (Fed. Cl. Spec. Mstr. July 22, 2022) (awarding $350.00 per hour for 2018, $375.00 per hour for 2019-2020, $400.00 per hour for 2021, and $470.00 per hour for 2022).

Additionally, Mr. Rooney requested compensation for paralegal work performed from 2018-2025 at a rate of $65.00 per hour.[5] Fees App., Ex. 1. I find the requested paralegal rates are reasonable and no adjustment is warranted, based on the Office of Special Masters' Fee Schedule and what Mr. Rooney's staff has previously been awarded. *See Pavan, next friend of J.P. v. Sec'y of Health & Hum. Servs.,* No. 14-60V, 2021 WL 1116403, at *2 (Fed. Cl. Spec. Mstr. Feb. 9, 2021) (awarding $65.00 per hour for paralegal work performed from 2019-2020).

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993).

---

[4] To be clear, I am approving the rates Mr. Rooney *actually billed*, which were calculated based on Exhibit 1 to the Fees App. ($300.00 per hour for work performed in 2018; $350.00 per hour for work performed from 2019-2022; $480.00 per hour for work performed in 2023; and $500.00 per hour for work performed from 2024-2025), not the *requested* rates listed in the Fees App. at 2.

[5] This hourly rate was calculated each year based on the invoice of Mr. Rooney's staff. For example, on January 8, 2025, LA/A billed 0.5 hours which amounted to a fee of $32.50 ($32.50 x 2 = $65.00 per hour of work performed). Fees App., Ex. 1 at 13.

6

In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs*., 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs*., 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed for at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at \*26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be largely reasonable; however, a reduction is necessary for time billed for clerical tasks and unreasonably vague billing entries, totaling approximately 8.35 hours. *See* Fees App., Ex.1. Examples include (but are not limited to):

- May 25, 2018: 0.1 hours billed by Mr. Rooney for "email correspondence";

- February 24, 2019: 0.1 hours billed by Mr. Rooney for "filing";

- May 7, 2021: 0.1 hours billed by Mr. Rooney to "review court order";

- March 2, 2025: 0.1 hour billed by Mr. Rooney to "review docket."

*Id.* These issues have previously been raised with Mr. Rooney and his colleagues. *See Jennings v. Sec'y of Health & Hum. Servs*., No. 16-779V, 2021 WL 1595723, at \*4-5 (Fed. Cl. Spec. Mstr. Apr. 23, 2021) (reducing Mr. Rooney's fees by $3,000 for vague billing entries and clerical tasks); *Dixon, next friend of J.D. v. Sec'y of Health and Hum. Servs.,* No. 17-1244, 2021 WL 2012633, at \*2 (Fed. Cl. Spec. Mstr. Apr. 29, 2021) (reducing Mr. Rooney's fees by 10% for vague billing entries); *Colpaert, Next Friend of R.C. v. Sec'y of Health & Hum. Servs.,* No. 17-1307V, 2019 WL 4865485, at \*2 (Fed. Cl. Spec. Mstr. Sep. 16, 2019) (reducing Mr. Rooney's fee for billing communications without mention of the topic of said communications); *Wyllis v Sec'y of Health & Hums. Servs.,* No. 11-764V, 2019 WL 3405111, at \*3 (Fed. Cl. Spec. Mstr. June 18, 2019) (reducing Mr. Rooney's fees for vague billing entries of "filing" despite nothing being filed in the case on that day). Because these billing practices extended over several years, I will apply a flat $3,000.00 deduction from the requested attorneys' fees.

Accordingly, Petitioners are awarded attorneys' fees in the amount of **$43,048.50**.[6]

**D. Reasonable Costs**

Petitioners request a total of $41,133.23 for attorneys' costs, consisting of $26.23 for FedEx costs; $402.00 for the petition filing fee; $29,205.00 for Dr. Akbari's expert costs, and $11,500.00 for Dr. Jeret's expert costs.  Fees App., Ex. 1 at 15.

Petitioners did not provide documentation for the costs associated with the FedEx and filing expenses; however, because these costs are normal business expenses and are not unreasonable, I award them in full.  I discuss Petitioners' expert costs below.

      1.  Petitioners' Expert Costs for Omid Akbari, Ph.D.

Petitioners request $29,205.00 for 53.1 hours of work performed by Dr. Akbari at a rate of $550.00 per hour.  Fee App., Ex. 2 at 3.  Respondent has urged me to consider the hourly rate paid to experts who appear on behalf of Respondent ($375.00) when determining an appropriate hourly rate for Dr. Akbari.  Fees Resp. at 5.  Petitioners respond that an hourly rate of $550.00 is appropriate given the increase in inflation over time.  Fees Reply at 3-4.  Other special masters have found these arguments unpersuasive and have maintained a $500.00 hourly rate for Dr. Akbari.  *See Bettinger v. Sec'y of Health & Hum. Servs.,* 23-1478V, 2025 WL 3267266, at *5 (Fed. Cl. Spec. Mstr. Oct. 27, 2025); *Colon Mercado v. Sec'y of Health & Hum. Servs.*, No. 20-395V, 2025 WL 3689121, at *4 (Fed. Cl. Spec. Mstr. Sep. 18, 2025); *Baker v. Sec'y of Health & Hum. Servs.*, No. 21-1869V, 2025 WL 1513417, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 29, 2025).

Since Dr. Akbari has consistently been awarded a rate of $500.00 per hour for his work in the Vaccine Program, I will adhere to that rate.  *See Baker*, 2025 WL 1513417, at *4 (listing cases in which Dr. Akbari has been awarded $500.00 per hour); *Bristow v. Sec'y of Health & Hum. Servs.*, No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (same); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *6 (Fed. Cl. Spec. Mstr. Feb 23, 2022) (same).  Accordingly, Dr. Akbari's rate will be reduced to $500.00 per hour.

Additionally, I find that a reduction in hours is necessary.  Dr. Akbari has billed for 53.1 hours spent on this case.  This includes time spent downloading and highlighting references, preparing billing statements, and reviewing medical literature, among other things.  *See* Fees App., Ex. 2.

Fees for experts are subject to the same reasonableness standard as fees for attorneys.  *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *Baker v. Sec'y of Health & Hum. Servs.*, 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005).  Here, several of Dr. Akbari's billing entries are for administrative tasks that are not compensable in the Vaccine Program.  For example, Dr. Akbari

---

[6] This total reflects the $46,048.50 in attorneys' fees actually billed by Mr. Rooney, minus the $3,000.00 reduction for vague billing entries and billing for clerical work. ($46,048.50-3,000.00 = 43,048.50).

billed 4.3 total hours to "download and highlight" 69 references and 0.9 hours for "preparation and updating of statement of hours." Fees App., Ex. 2 at 3. Such entries are considered administrative and are therefore not compensable. Dr. Akbari has previously been warned against billing for such tasks. *See Williams v. Sec'y of Health & Hum. Servs.*, No. 19-1269V, 2024 WL 1253768, at *4 (Fed. Cl. Spec. Mstr. Feb. 28, 2024); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *6 (Fed. Cl. Spec. Mstr. Feb. 23, 2022).

Additionally, an expert may be compensated only for the number of hours reasonably expended by the expert. *King ex rel. King v. Sec'y of Health & Hum. Servs.*, No. 03-584V, 2010 WL 5470787, at *4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010) (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable."); *Hines*, 22 Cl. Ct. at 754 ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'") (quoting *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990)). I, along with other special masters, have reduced Dr. Akbari's hours for excessive time spent reviewing medical literature. *See Cogan v. Sec'y of Health & Hum. Servs.,* No. 21-1847V, 2025 WL 2505545, at *6 (Fed. Cl. Spec. Mstr. July 24, 2025) (reducing Dr. Akbari's billed hours by 20% for administrative tasks and excessive billing to review medical literature); *Walters*, 2021 WL 3928993, at *7-8 (reducing Dr. Akbari's billed hours by 20% for excessive time spent reviewing medical literature); *Reinhardt v. Sec'y of Health & Hum. Servs.*, No 17-1257V, 2021 WL 2373818, at *5 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (same).

Here, Dr. Akbari billed roughly 19 hours for medical literature review. Fees App., Ex. 2. By contrast, Dr. Jeret also submitted an expert report and billed a *total* of 23 hours, 10.75 of which were for the review of exhibits. Fees App., Ex. 3. I find the hours billed by Dr. Akbari for medical literature review and administrative tasks to be excessive.

As noted, in making reductions, a line-by-line evaluation is not required. *Broekelschen*, 102 Fed. Cl. at 729; *see also Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). Rather, special masters may "render a decision based on general guidelines as to a reasonable fee" in the context of the Vaccine Program and in the context of a particular case. *Wasson*, 24 Cl. Ct. at 484. Special masters are permitted to use their discretion to take an across-the-board reduction in appropriate circumstances. *See Humphries v. Sec'y of Health & Hum. Servs.*, No. 17-288V, 2021 WL 5444097, at *5 (Fed. Cl. Spec. Mstr. Oct. 26, 2021). I find that a 20% reduction is appropriate to account for the billing for administrative tasks and excessive billing to review medical literature. *See Nieves v. Sec'y of Health & Hum. Servs.*, No. 18-1602V, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023) (reducing Dr. Akbari's hours by 20% for excessive billing); *Reinhardt*, 2021 WL 2373818, at *4 (reducing Dr. Akbari's hours by 20% after finding his billing to be "well in excess of the time spent by other experts in cases of comparable complexity"). Accordingly, I will reduce Dr. Akbari's requested time by 20%, for a total reduction of 10.62 hours.

I award a total of $21,240.00 for costs associated with Dr. Akbari's work.[7]

---

[7] This total reflects the 20% deduction to the 53.1 hours Dr. Akbari billed at a rate of $500.00 per hour. (53.1 hours - (53.1 hours x 20% deduction) = 42.48 hours x $500.00 hourly rate = $21,240.00 award).

2.  Petitioners' Expert Costs for Joseph S. Jeret. M.D.

Petitioners request $11,500.00 for 23 hours of work performed by Dr. Jeret at a rate of $500.00 per hour. Fee App., Ex. 3. Again, Respondent has urged me to consider the hourly rate paid to experts who appear on behalf of Respondent ($375.00) when determining an appropriate hourly rate for Dr. Jeret. Fees Resp. at 5. In support of the requested rate, Petitioners cite to Dr. Jeret's extensive experience and award of $500.00 per hour in previous cases. Fees Reply at 5. Dr. Jeret has previously been awarded his requested rate, and I see no reason to disturb his request. *See Bettinger*, 2025 WL 3267266, at *5; *Ray v. Sec'y of Health & Hum. Servs.*, No. 20-321V, 2025 WL 2780387, at *5 (Fed. Cl. Spec. Mstr. Sep. 5, 2025); *Young v. Sec'y of Health & Hum. Servs.*, No. 20-478V, 2025 WL 1453558, at *2 (Fed. Cl. Spec. Mstr. Apr. 10, 2025). Additionally, I find the overall number of hours expended by Dr. Jeret to be reasonable, and I will award his expert costs in full.

I award Petitioners a total of **$33,168.23** in attorneys' costs.[8]

## III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT IN PART** Petitioners' application. Petitioners are awarded interim attorneys' fees and costs in the total amount of **$76,216.73** as follows:

- A lump sum in the amount of **$76,216.73**, representing reimbursement of Petitioners' interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[9]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[8] Petitioners are awarded $402.00 for the petition filing fee; $26.23 for FedEx costs, $21,240.00 for Dr. Akbari's work, and $11,500.00 for Dr. Jeret's work; totaling $33,168.23.

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.